AMERICAN LIFE INSURANCE COMPANY V. NEOMA LEE NABORS.

No. 6237.   Decided November 28, 1934.
(76 S. W., 2d Series, 497.)

*Seay, Seay, Malone & Lipscomb,* of Dallas, and *Garnett & Garnett,* of Gainesville, for plaintiffs in error.

Cited authorities in opinion.

*Edwards & Robinson,* of Oklahoma City, Okla., and *Murphy & Murphy,* of Gainesville, for defendant in error.

The American Life Insurance Company, having solicited and taken an application for insurance on the life of Allie Lee Olive Parkey, and having received from her the premium then demanded therefor, was legally bound to reject said application, or to issue to her a policy of insurance within a reasonable time, and failing so to do it became liable for the resulting damages. Duffie v. Bankers Life Assn., 160 Iowa, 19, 46 L. R. A. (N. S.) 25, 139 N. W., 1087, and other cases cited in opinion as sustaining the holdings of the Court of Civil Appeals.

Mr. Judge CRITZ delivered the opinion of Commission of Appeals, Section B.

This suit was instituted in the District Court of Cooke County, Texas, by Neoma Lee Nabors, a minor, by and through her uncle, John A. Miller, as her next friend, against American Life Insurance Company, a corporation, duly authorized to do business in this State. The action is based on an alleged tort as will later more fully appear. Trial in the district court, where the case was submitted to a jury on special issues, resulted in a verdict and judgment for Neoma Lee Nabors for $1,250.00 This judgment was affirmed by the Court of Civil Appeals at Fort Worth. The Insurance Company brings error.

For convenience we shall hereafter refer to Neoma Lee Nabors as plaintiff, and to the Insurance Company as defendant.

For the purposes of this opinion we will assume that the record in this case shows that Allie Lee O. Parkey, now deceased, was the mother of the plaintiff; that during her lifetime Mrs. Parkey made application in due form to defendant for a policy of life insurance, naming plaintiff as the beneficiary therein; that the application was for what is generally known as a "non-medical" policy, that is, no medical examination was contemplated; that at the time the application was delivered to the defendant's agent Mrs. Parkey paid the first premium as required by the defendant; that the defendant's agent then gave Mrs. Parkey a receipt for such premium which expressly stipulated that if "the application is approved by the company for the form of policy applied for and in that event, the insurance as applied for will be in force from the date of the application";

that at the time Mrs. Parkey made application she was a young strong woman in good health, and was not affected by any of the diseases inquired about in the application; that after making the application, and paying the first premium Mrs. Parkey was intentionally killed by her estranged husband, who in turn killed himself; that at the time of Mrs. Parkey's death the Insurance Company had not passed on her application, and had never accepted or rejected it; that the Insurance Company had a reasonable time in which to pass on Mrs. Parkey's application before her death, and if such can constitute negligence was guilty thereof in failing to do so.

The record also shows that after Mrs. Parkey's death the defendant rejected her application, and directed its agent who took the same to return the premium paid by her. We gather from the record that the agent attempted to do this by forwarding to John A. Miller, who acts as next friend herein, a money order for the correct amount. Miller refused to receive the money order and it was again tendered to him during the trial. This seems to be the only tender offered by defendant.

The application signed by Mrs. Parkey is contained in the record. It provides that; "If the first premium is paid at the time the application is made and the policy is issued in every particular as originally applied for, the insurance shall be in force immediately upon approval of the application by the company, and the first policy year shall begin with the date of this application unless a different date is specifically requested herein."

Simply stated, plaintiff's counsel contend that an insurance company can be guilty of negligence in failing to pass on an application for insurance within a reasonable time. In this connection they contend that a tort action for damages will lie in favor of the beneficiary named in an application for life insurance for unreasonable delay in passing on such application. Plaintiff's counsel further contend that recovery should be measured by the insurance applied for. These contentions were sustained by the Court of Civil Appeals, and such ruling is here assigned as error by the defendant.

A decision of this case involves the proper application of the following well known rules of law:

(a) Delay in passing on an application for insurance will not give rise to an action ex contractu against a life insurance company. Connecticut Mutual Life Insurance Company v. Rudolph, 45 Texas, 454; Great Southern Life Insurance Company v. Dolan (Com. App.), 262 S. W., 475; Brownwood

Benevolent Association v. Maness (Civ. App. writ ref.), 30 S. W. (2d) 1114; Victory Life Insurance Company v. Ferrell (Civ. App.), 24 S. W. (2d) 774.

(b) It is the law of this State, and the general rule that a tort is "the infingement of a right created otherwise than by contract." Jones v. Hunt, 74 Texas, 657, 12 S. W., 832. "The distinguishing feature of torts, as applied to legal actions, is that they never arise ex contractu." 26 R. C. L., p. 756, No. 2. Of course all tort actions are not completely disconnected from contracts, because the existence of a contract may sometimes constitute the circumstance necessary to give some particular conduct the character of a breach of duty, and thus constitute such conduct a tort. 62 C. J., pp. 1092-3. In other words there are certain contracts which bring into existence duties which are prescribed by law, as well as the contractual duties brought into being by the will of the parties. A breach of such a contract may give rise to a tort action. Id.

(c) A refusal to contract may constitute a tort where the law imposes the duty so to do, otherwise a refusal to contract is not a tort. 62 C. J., 1094-5.

(d) Where the law imposes no duty to contract there can be no such thing as negligence of a party in the matter of delay in accepting or rejecting an offer so to do.

(e) A life insurance company is at liberty to choose its own risks, and may accept or reject those who apply to it for insurance as it sees fit.

■ When we come to consider the case at bar we find that there is no contention made by plaintiff that any insurance contract was ever entered into between the defendant and Mrs. Parkey. It therefore follows that the tort action here attempted cannot be sustained on any theory of a breach of contract. In other words it cannot be said that the defendant committed a tort by breaching a contract which brought into being duties prescribed by law.

■ Since it is the law that a life insurance company is at liberty to choose its own risks, and may accept or reject those who apply to it for insurance as it may see fit, the judgment of the Court of Civil Appeals cannot be sustained on the theory that defendant owed Mrs. Parkey a duty to accept her application.

From what has been said it plainly appears that this action cannot be maintained unless it is held that the general rule above announced, to the effect that where the law imposes no duty to contract there can be no such thing as negligence in

the matter of delay in accepting or rejecting an offer so to do, does not apply to insurance companies. The opinion of the Court of Civil Appeals holds in effect that life insurance companies are excepted from such general rule. The opinion cites the following authorities as directly supporting its ruling: Duffie v. Bankers Life Ins. Co., 160 Iowa, 19, 46 L. R. A. (N. S.) 25; Strand v. Bankers Life Ins. Co., 115 Neb., 357; 213 N. W., 349; Security Ins. Co. v. Cameron, 85 Okla., 171, 205 Pac., 151; Boyer v. State Farmers M. Hail Ins. Co., 96 Kan., 442, 121 Pac., 329, 40 L. R. A. (N. S.) 164; Behnke v. Standard Acc. Ins. Co., 41 Fed. (2d) 696. These cases seem to support the holding.

The original and leading case cited by the Court of Civil Appeals is the Duffie case, supra. The holding in that case sustains the ruling of the Court of Civil Appeals in the case at bar. The Duffie case is by the Supreme Court of Iowa. A careful reading of the opinion discloses that it upholds the recovery for damages as for tort in a case like this on the theory that the general rule, to the effect that where the law imposes no duty to contract there is no such thing as negligence of a party in the matter of delay in accepting or rejecting an offer so to do, does not apply to life insurance companies. The Iowa court bases its ruling on the holding that life insurance companies are excepted from the general rule on the theory that they operate under franchises from the State and that their business is of such general public interest that the receipt of an application implies "a duty on the part of the insurance company to act on the proposed risk within a reasonable time under the circumstances surrounding the transaction." We here quote the following from the opinion:

"But it is said that a certificate or policy of insurance is simply a contract like any other, as between individuals, and that there is no such thing as negligence of a party in the matter of delay in entering into a contract. This view overlooks the fact that the defendant holds and is acting under a franchise from the state. The legislative policy, in granting this, proceeds on the theory that chartering such association is in the interest of the public, to the end that indemnity on specific contingencies shall be provided those who are eligible and desire it, and for their protection the state regulates, inspects and supervises their business. Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish, or decline so to do within such reasonable time as will

enable them to act intelligently and advisedly thereon, or suffer the consequences flowing from their neglect so to do. Otherwise the applicant is unduly delayed in obtaining the insurance he desires, and for which the law has afforded the opportunity, and which the insurer impliedly has promised, if conditions are satisfactory. Moreover, policies or certificates of insurance ordinarily are dated as of the date the application is signed, and, aside from other considerations, the insurer should not be permitted to unduly prolong the period for which it is exacting the payment of premium without incurring risk. What was said in Northwestern Mutual L. Ins. Co. v. Neafus, 145 Ky., 563, 140 S. W., 1026, 36 L. R. A. (N. S.) 1211, is pertinent: 'If in this case there was evidence that the company was induced to reject the application for the sole reason that Neafus had died before it acted upon it, or to show that his application, except for the fact of his death, would have been approved, we would have a very different question. We think there is a sound and well-defined distinction between a case in which the application under no circumstances would have been accepted, and a case in which it would have been accepted except for the fact that the applicant died before it was acted upon, and after the company had a reasonable time in which to act. While the application and receipt are to be treated merely as a proposal for insurance, that it is with the company at its election to accept or reject, it may well be said that the company must act honestly and fairly on the application submitted to it, and which it impliedly at least agreed to accept, if satisfactory to it; and that if an application is satisfactory, and the company, if it had acted in a reasonable time, would have accepted the risk, it should not be allowed, after holding the application for an unreasonable time, to reject it, solely because of the death of the applicant. But, treating the case as we find it in the record, the delay, however unreasonable it may have been, cannot be construed into an acceptance of an application that no well-managed company, in the ordinary course of its business, would have accepted.' "

The other authorities cited by the Court of Civil Appeals uphold this recovery on the same general grounds as the Iowa Supreme Court.

■ We are inclined to the view that the rule of law which seems to have been originated by the Supreme Court of Iowa in the Duffie case, supra, and subsequently followed by the decisions of several other states, is not founded on correct legal principles. It is difficult for us to understand how negligence and liability

therefor can be predicated upon circumstances that do not impose any legal obligation. Certainly the rule announced by the Iowa court does not exist at common law, and the Legislature has not seen fit to make it the statutory law of this State. All of the authorities class insurance contracts, as such, as fundamentally the same as other contracts as regards offer and acceptance. There is no contract unless and until the application for insurance is accepted by the Insurance Company. In spite of this the Iowa rule would single out insurance companies from all other concerns, and accomplish, as against them, by indirection in the form of a tort action that which the law will not permit to be done directly even against such companies. Such a rule would keep insurance companies in constant danger of tort actions in all cases where the applicant dies pending the acceptance or rejection of his application, and would greatly hamper the business. Schleip v. Commercial Casualty Insurance Co., 191 Minn., 210, 254 N. W., 618; Thornton v. National Council, Junior Order United American Mechanics, 110 W. Va., 412, 158 S. E., 507; National Union Fire Ins. Co. v. School District, 122 Ark., 179, 182 S. W., 547.

In the Schleip case, supra, the Supreme Court of Minnesota had before it the very law question here involved. That Court refused to except the insurance company from the general rule. We quote the following from that opinion:

"1. 'It is a well-settled rule, established by the great weight of authority, that mere delay in passing upon an application for insurance cannot be construed as an acceptance thereof by the insurer which will support an action ex contractu.' Anno. 15 A. L. R., p. 1026.

" 'Effect of delay. Acceptance of the application in some form being essential to the validity of the contract, mere delay in acceptance of an application made, or failure to notify insured of the rejection of his application, will not as a general rule constitute a contract of insurance.' 26 C. J., p. 54, No. 46 (2). Swentusky v. Prudential Ins. Co., 116 Conn., 526, 165 A., 686; Heiman v. Phoenix Mutual Life Ins. Co., 17 Minn., 153 (Gil. 127), 10 Am. Rep. 154; Giddings v. Insurance Company, 102 U. S., 108, 111, 26 L. Ed., 92; Misselhorn v. Mutual Reserve Fund Life Ass'n (C. C.), 30 F., 545, 546; Travis v. Nederland Life Ins. Co. (C. C. A), 104 F., 486, 488.

"In an interesting article in volume 17, Minn. Law Rev., p. 578, it is said: 'Since an offer creates no duty in the offeree to accept or to reject, a mere failure on the part of the insurance company to act on the application, no matter how long

its silence and inaction may be continued, does not amount to an acceptance, and creates no contract liability.'

"Numerous cases are cited in support of the text.

"2. Plaintiff does not reply upon an insurance contract nor does he seek to enforce his claim for damages upon any contractual basis. Reliance is placed squarely upon tort; i.e., negligence on the part of defendant and its agent is not acting upon the application. This then brings us to a consideration of the cases upon which plaintiff places reliance. The leading case on this subject and the one that has been followed more than any other case in the decisions upholding plaintiff's theory is that of Duffie v. Bankers' Life Ass'n., 160 Iowa, 19, 139 N. W., 1087, 46 L. R. A. (N. S.) 25. It is there held that there is a duty imposed upon the insurance company because of its public character and its franchise from the state which requires it to act promptly upon all applications. If it so fails to act, an action in tort lies. Other decisions of similar import place decision for plaintiff under similar circumstances upon various grounds. It is sometimes said that the principle of estoppel is applicable. In the Wisconsin case of Kukuska v. Home Mut. H. T. Ins. Co., 204 Wis., 166, 173, 235 N. W., 403, 405, the court sustains a recovery for plaintiff upon the theory that 'it seems to be more in accord with ordinary legal concepts to say that it is a quasi-contractual duty.'

"Vance in his excellent work on Insurance (2d Ed.), p. 190, under the title 'Insurer's Liability in Tort for Negligent Delay,' comments upon this phase of insurance law as interpreted by those courts that hold to the theory advocated and advanced by plaintiff. He refers to the doctrine as 'novel' and as an 'interesting and rather surprising rule.' The doctrine has never been accepted in this state nor has it heretofore come before this court. Thus we are free to act, and it becomes our duty to determine whether this, 'novel, interesting and rather surprising' doctrine is to be imposed upon insurers by judicial legislation.

"A brief resume of the cases holding the opposite view to those upon which plaintiff relies is deemed appropriate. Thus the Supreme Court of Mississippi in Savage v. Prudential Life Ins. Co., 154 Miss., 89, 102, 121 So., 487, 488, has this to say:

"'Appellant is careful to state that this is an action ex delicto, not an action ex contractu. He does not contend that the minds of the parties had met, or that a contract had been consummated.

"'Counsel's argument for reversal of the decision of the

lower court is based upon the theory that a tort arises from a failure to accept an offer to make a contract within a reasonable time, and that the amount of recovery and the amount of damages shall be measured by the face value of the policy, there being a double indemnity clause in this case. * * *

"'We are unable to perceive how an action may be maintained in tort which so clearly cannot be maintained on any theory in the contract. The Prudential Life Insurance Company was under no duty to write insurance on the life of appellant's intestate, because there is no statute in this state fixing such duty upon insurance companies. We can find no such rule at the common law. It is quite elementary that there cannot be a tort without a breach of a legal duty. It is true that the business of insurance is affected with a public interest, and it may be that under the State and Federal Constitutions the Legislature might impose upon insurance companies a duty in this behalf. But, unless and until the Legislature shall declare a legal duty on the insurance companies to an applicant for insurance, despite the terms of the application, this court is without the power or the desire to trench upon legislative authority.'

"In National Union Fire Ins. Co. v. School Dist. No. 55, 122 Ark., 179, 183, 182 S. W., 547, 548, L. R. A., 1916D, 238, the court said: 'Negligence and liability therefor cannot be predicated upon a state of facts that do not impose any legal duty.' See also Interstate Business Men's Acc. Assn. v. Nichols, 143 Ark., 369, 220 S. W., 477; Metropolitan Life Ins. Co. v. Brady, 95 Ind. App., 564; 174 N. E., 99.

"The Supreme Court of Connecticut in Swentusky v. Prudential Ins. Co., 116 Conn., 526, 165 A., 686, 687, discussed the queston thoroughly. We quote therefrom the following:

"'The complaint states as the only basis of recovery by the plaintiff the negligence and carelessness of the defendant's agent in failing to forward the application to it for a period of about two weeks. The trial court gave judgment for the defendant and the plaintiff has appealed.

"The question whether there might be a recovery against an insurer where there has been a delay in issuing a policy of insurance after the making of an application has been before the courts in a considerable number of cases. Carl W. Funk, in an article written in 1927, ably examines and analyzes the principal cases decided before that year, and in that article and in a comment written in 1930 in the Yale Law Journal all the later decisions of consequence are referred to. 75 University of Pennsylvania Law Review, p. 207; 40 Yale Law Journal, p. 121.

Most of the more recent decisions have dealt with situations where liability was claimed to exist, as in the case before us, upon the ground of the negligence of the agent, and in all but two of these cases the insurer has been held liable. The exceptions are the cases of Savage v. Prudential Life Ins. Co., 154 Miss., 89, 121 So., 487, and Metropolitan Life Ins. Co. v. Brady, 95 Ind. App., 564, 174 N. E., 99.

" 'It is not our purpose to discuss the reasoning of the decisions in other jurisdictions in detail. We agree with the commentators upon them that there is much in them which runs counter to accepted legal principles. But that so many courts have found liability to exist evidences a general feeling that to hold otherwise would be to deny a claim intrinsically just, and emphasizes the need to test that claim by a sedulous consideration of the legal principles which might be involved. In doing this, however, we cannot be unmindful of the limitations upon our proper functions in declaring the unwritten law of this state. That law can never be static but it must be everlastingly developing to meet the changing needs of a changing civilization. But if our system of law is to have stability and a measurable degree of certainty, its development must be an orderly process, an accretion to the body of principles which are the outgrowth of past precedents, reasoned out in pursuance of that method of thinking which is the essence of common law. Merely because it seems to us unjust that a plaintiff situated as is the one before us should not recover, or that 'social desirability' dictates that she should, affords no sufficient basis upon which we may find liability. Unless the application, and reasonable development of accepted principles of law justify that recovery, the remedy, if any, rests with the Legislature and not with the courts. * * *"

In the Thornton case, supra, the Supreme Court of Appeals of West Virginia, which is the court of last resort in that State, had before it the identical law question here involved. We quote the following from that opinion:

"This action is described in appellee's brief as 'a tort action for negligent delay of the defendant in forwarding the application for acceptance or rejection.' The brief expressly denies that this is an action on the policy and explains that the policy was brought into the case only to show that the applicant was an acceptable risk. The brief cites decisions from Kansas, Iowa, Colorado, and Nebraska, which uphold the right of recovery in such actions. See Boyer v. Ins. Co., 86 Kan., 442, 121 P., 329, 40 L. R. A. (N. S.) 164, Ann Cas., 1915A, 671; Duffie

v. Bankers' Life Assn., 160 Iowa, 19, 139 N. W., 1087, 1090, 46 L. R. A. (N. S.) 25; De Ford v. Ins. Co., 75 Colo., 146, 224 P., 1049; Strand v. Ins. Co., 115 Neb., 357, 213 N. W., 349. The brief cites cases from Oklahoma and Washington, which permit recovery for such delay in actions founded in contract though sounding in or nominally laid in tort. See Security Ins. Co. v. Cameron, 85 Okla., 171, 205 P., 151, 27 A. L. R., 444; Dyer v. Ins. Co., 132 Wash., 378, 232 P., 346. It also cites decisions from North Carolina, North Dakota, Idaho, Indiana, and Kentucky which are not listed herein, as they are based on facts materially different from those of the instant case. The decisions which recognize the right to proceed solely in tort are termed 'a class of comparatively recent cases' in the annotation on page 1029 of 15 A. L. R. They are based on the theory that it is desirable from the standpoint of public policy that an 'indemnity on specific contingencies shall be provided those who are eligible and desire it'; that an insurance company is affected by this public interest; that having solicited and obtained an application for insurance and accepted conditionally the initial premium, it then becomes the duty of the insurance company to act upon the application within a reasonable time; and that the company is liable for all damages suffered in consequence of a breach of this duty.

"The long-established conception of the legal relations between an applicant and an insurance company is that such relations are fundamentally the same as those between parties negotiating any other contract, and are 'purely contractual.' 'The contract of insurance is to be tested by the principles applicable to the making of contracts in general.' Clark v. Ins. Co., 89 Me., 26, 35 A., 1008, 1011, 35 L. R. A., 276; 32 C. J., 1091 (Insurance); 37 C. J., 378 (Life Insurance); 14 R. C. L., p. 896, No. 72; Meadows v. Ins. Co., 104 W. Va., 580, 583, 584, 140 S. E., 552. It is settled almost beyond cavil that mere delay, mere inaction, by an insurance company in passing on an application, does not constitute an acceptance or establish the relationship of insurer and insured. Joyce, Insurance, No. 57; 1 Couch Cyc. of Ins. Law, No. 86; 1 Cooley's Briefs on Ins. (2d Ed), pp. 595, 596. Yet the theory advanced by appellee, in making the insurer responsible in damages for the amount of the policy because of delay, would accomplish by indirection that which the law will not permit to be done directly.

"No reason is apparent why an insurance contract should be regarded as of any more interest to the public than a contract of employment. It is of as much importance to the public

that a person and his dependents have support during his life-time (by wages or salary) as that his beneficiaries have a competency (through insurance) after his death. Yet it has never been held that delay in passing upon an application for employment affected the public interest to the extent that it made the employer liable for all damages arising from such delay. The theory advocated by appellee is such an innovation on established insurance law that this court is not prepared now to accept it. We do not mean to imply, however, that action in such case might not lie on an implied contract."

We think the two opinions above quoted from lay down the correct rule, and the one founded on unquestioned legal principles.

At this point we here refer to the notes in 15 A. L. R., 1029, and 75 A. L. R., 955 for a full citation of the authorities on both sides of this question.

For the reasons stated the judgments of the Court of Civil Appeals and district court are both reversed and judgment here rendered for the plaintiff for the sum of $13.52 premium paid. It is also adjudged that the defendant shall pay all costs in the district court and the plaintiff shall pay all costs of appeal in this Court and in the Court of Civil Appeals.

Opinion adopted by the Supreme Court November 28, 1934.