## SOUTHWESTERN LIFE INS. CO.

### v.

### EVANS.

### No. 4913.

Court of Civil Appeals of Texas.
Beaumont.

Nov. 12, 1953.

Rehearing Denied Dec. 9, 1953.

James P. Swift, Dallas, T. F. Green, Jr., Conroe, for appellant.

Smith & Lehman, Houston, Campbell & Foreman, Livingston, for appellee.

R. L. MURRAY, Chief Justice.

Mrs. Ellen L. Evans, the appellee, brought suit in the District Court of San Jacinto County against the Southwestern Life Insurance Company, the appellant, to recover as beneficiary under a contract of life insurance which she alleged was in effect upon the life of her deceased husband, William Paul Evans. No policy of insurance was ever issued by the appellant to Mr. Evans but an application had been made by him and a check for the first year's premium on insurance applied for had been paid by Mr. Evans and received by the appellant company. The case was heard by the court without the aid of a jury and the court first entered judgment in favor of the appellant that the appellee take nothing by her suit. Thereafter on motion of the appellee, the court set aside this judgment and entered a new judgment in favor of the appellee for the sum of $46,963, the amount sued for. The court filed its findings of fact and conclusions of law after the entry of the first judgment in favor of the insurance company, which findings and conclusions were set aside when the original judgment was set aside. After the second judgment was entered the court filed findings of fact and conclusions of law. The appellant has duly perfected its appeal from the judgment in favor of the appellee Mrs. Evans.

The whole controversy here is whether life insurance was in effect and insured the life of William Paul Evans at the time of his death. There is no serious controversy as to the facts in the case, but the parties differ as to the law which applies to the facts before us. The appellee maintains that the life insurance was in effect on the life of her husband and that the trial court's judgment in her favor should be affirmed because of the following facts:

On November 26, 1949 William Paul Evans signed an application for life insurance with the appellant Southwestern Life Insurance Company for the benefit of the

appellee on the Whole Life Plan, with the premium of $733.75 payable annually in advance, with double indemnity for accidental death. The application was solicited and taken by G. M. Clemons, who was a licensed soliciting agent of the company. With the application Mr. Evans gave Mr. Clemons a check signed by Mrs. Evans for $733.75, payable to the appellant. Mr. Clemons attached the check to the application and mailed it to the appellant at its home office in Dallas. Mr. Clemons gave Mr. Evans, on a form provided by the appellant company, its conditional receipt for the sum so paid and collected. The company received the check and application at its Dallas office on November 28, 1949. On November 26 and 28 Mr. Evans was physically examined by one of the company's approved physicians who rated him a first class risk, from a medical standpoint. When the application and check were received at the company's home office the application went to the underwriting department and various steps in the process of examining the application were conducted. The application was never formally approved by the company, no policy was ever issued and no instructions for the issuance of the policy was ever given. The appellee maintains that the application was approved by the "overt act" of the appellant company in depositing the check in its bank account and commingling the proceeds thereof with its other funds. The check was paid by the bank on which it was drawn on December 2, 1949. Mr. Evans was killed in an automobile accident in the late afternoon of December 3, 1949. On December 9, 1949 the appellant notified appellee that no insurance had been effected and that the $733.75 would be returned. Mr. Clemons, the agent, testified that he explained to Mr. and Mrs. Evans at the time he solicited the application for insurance that the long practice of the company was for the advance payment check to be attached to the application, check and the application to be acted upon in one transaction; that he had been instructed in this practice from the company's home office in Dallas; that the company cashes the check if it approves the application;

that he made these explanations under the advice and instructions of his company; that he had never received any instructions from his company that conflicted with or varied with the terms of the written application and the written form of conditional receipt. Mrs. Evans testified also to such statements by Clemons, and testified further that Mr. Evans relied on such statements and would not have given Clemons the check unless the statements had been made.

The written application signed by Mr. Evans and the wording of the conditional receipt given to Mr. Evans by Mr. Clemons were as follows:

"I agree, in behalf of myself and of every person who shall have or claim any interest in any policy issued in consequence hereof, as follows:" (1) "The Company shall not incur any liability on account of this application or of any policy issued in consequence hereof unless and until such policy shall be actually delivered to me and accepted by me during my lifetime and good health (except as provided in the receipt for advance payment of premium bearing the same number as this application if the premium has been paid and such receipt issued) and the first premium thereon shall be actually paid to and accepted by the Company or its duly authorized agent; but, if and when so delivered and paid for, the policy and all of its provisions shall be deemed effective as of and from the date of signature recited therein and the policy years shall begin with that date." (2) "This application, consisting of Parts 1 and 2, each signed by me, and the policy issued thereon shall constitute the entire contract; and the Company shall not be bound to disclose its reasons for action on any application submitted, nor be in any way affected by any promises or statements made by or to, nor any information possessed by, any agent or other person, and not recorded in said application. Each and every statement and answer contained in either of said two

parts is full, complete, and true as therein recorded." (3) * * * (4) "The Company shall be entitled to sixty days from the date of Part 1 of this application, which I agree is a reasonable period, in which to act upon said application, and if a policy (or written notice of approval or rejection) is not received by me within that period then this application shall be deemed to have been declined by the Company." (5) * * *.

No. P117685

If the premium is paid in advance, this receipt must be completed and given to the applicant.

No Other Form of receipt for advance payment of premium will Be Recognized By the Company.

An application for a $22,980.00 Policy having been made by William Paul Evans to the

Southwestern Life Insurance Co.
Dallas, Texas

There has been collected from him $733.75 Dollars which shall be accepted in payment of the first premium on the policy applied for, provided the application is approved by the Company at its Home Office without modification of the plan of insurance, amount or premium, and in that event, the insurance as applied for will be considered as having been in force from the date of the application. If the application is not so approved, the sum collected will be returned.

Nov. 26, 1949 G. M. CLEMONS, Agent

If the premium is not paid in full, this receipt must not be detached."

---

The appellant's contentions on appeal are brought forward by five points which are as follows:

"First Point

"No insurance herein sued upon was ever made, consummated or affected because the application and conditional receipt stipulated that the Company would incur no liability unless the application be approved by the Company at its Home Office without modification of the plan of insurance, amount, or premium applied for, and that if not so approved the sum collected in exchange for the conditional receipt would be returned, and the application was never approved.

"Second Point

"The deposit and collection by the Company of the check did not and could not constitute an approval of the application.

"Third Point

"Clemons had no authority, actual or apparent, to bind or affect the Company and no representation or promise made by him could bind or affect the Company.

"Fourth Point

"Clemons was precluded by Article 21.04 of the Texas Insurance Code from waiving, changing or altering any of the terms or conditions of the application.

"Fifth Point

"The application expressly precludes temporary insurance by the agreement that the Company shall have 60 days in which to act, and that in the absence of action the application will be deemed declined."

Article 21.04 of the Insurance Code, Volume 14, Vernon's Annotated Civil Statutes

of Texas, provides as follows: "Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

The appellee's contentions in support of the judgment are found in her five counter points, as follows:

1. As the interpretation of the contract urged by the appellee is not unreasonable, the insurer is liable.

2. It was the intent of the parties that the advance payment of the premium created a contract of temporary insurance, pending final action on the application.

3. By overt acts and conduct the insurer approved the application.

4. The agent, G. M. Clemons, acted under express authority of the company when he explained that the check would not be detached nor cashed unless the application was approved.

5. The cases relied on by appellant are not in point.

█ The statements by the soliciting agent Clemons to Mr. and Mrs. Evans, relied upon by the appellee, could not in any manner serve to alter or waive any of the provisions contained in the written application signed by Mr. Evans and the conditional receipt given Mr. Evans by Clemons. This is the construction given by our courts to Article 21.04, Insurance Code, 14 Vernon's Texas Annotated Civil Statutes, quoted above. Beaty v. Southland Life Ins. Co., Tex.Civ.App., 28 S.W.2d 895; Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660; Missouri State Life Ins. Co. v. Boles, Tex.Civ.App., 288 S.W. 271; Great Nat. Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602; Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623. In the case before us, the statement by Clemons that the check for the advance payment of the first year's premium would be attached to the application and that the two would be acted upon by the life insurance company as one transaction and that the check would not be cashed by the company unless it approved the application is clearly inconsistent with the provisions of the written application and conditional receipt which are set out in full above. The conditional receipt plainly states that the sum of $733.75 had been collected from Mr. Evans and would be accepted in payment of the first year's premium provided the application was approved by the company at its home office, and that if the application should not be approved the sum would be returned. Mr. Evans was not warranted in relying upon the verbal statement made to him by Clemons, since the provisions of Article 21.04 are held by our courts to be written into and a part of every life insurance application, and he was charged as a matter of law with the effect of such statute. The question, therefore, is resolved into a determination of whether under the application and conditional receipt insurance upon the life of Mr. Evans was in effect from the date of the application.

█ It is plain from the wording of the application and conditional receipt that the advance payment of the premium would be accepted in payment of the first premium only if the application should be approved by the company at its home office. No such approval is shown by this record. The acceptance, endorsement, and deposit of the check by the company did not in any way constitute an approval of Mr. Evans' application. The receipt itself makes no mention of a check, nor the effect of cashing a check, but states that "the sum of $733.75" had been collected from Mr. Evans and the receipt shows that the parties considered it as a collection in cash. The receipt itself treats the sum as fully collected, as it adds the phrase that "if the application should not be approved the sum collected will be returned." The advance collection of the premium, on the terms set out in the conditional receipt, did not

create or put into effect temporary life insurance on the life of Mr. Evans from the date of the application. As we construe it, the application and receipt showing an advance payment of premium together constitute no more than an application for life insurance, subject to the approval of the company at its home office. In the absence of a showing of such approval by the company no life insurance contract has been shown. See Connecticut Mutual Life Ins Co. v. Rudolph, 45 Tex. 454; Amicable Life Ins. Co. v. Neale, Tex.Civ.App., 226 S.W.2d 479, 481; Victory Life Ins. Co. v. Ferrell, Tex.Civ.App., 24 S.W.2d 774; Beaty v. Southland Life Ins. Co., supra.

The cashing of the check by the company after it was received at its home office could not be regarded as an overt act which evidenced approval by the company of the application. The check was given to Clemons as payment of the first year's premium, thus initiating Evans' first step in connection with the conditional receipt plan for securing life insurance. This advance payment was necessary before Evans had any rights at all under the application and receipt. If such payment had not been made, and such receipt given, no semblance of a claim for insurance could have been made until actual delivery of an insurance policy by appellant to Mr. Evans and accepted by him during his lifetime while in good health. The receipt states that "there has been collected from him $733.75". The company treated the collection as a cash collection. The appellee has to view the delivery of the check to Clemons as a payment of $733.75 under the terms of the receipt in order to sue under the application and receipt. Having done so, she cannot then be heard to argue that no payment had been made until the insurer cashed the check, and that such cashing of the check constituted an approval of the application by Mr. Evans. The receipt itself gave the company the right to the proceeds of the check, since the last sentence in the receipt is, "If the application is not so approved, the sum collected will be returned." The language of the receipt as a whole evidences an agreement that the company had the right to the money until it refused the application, and thus had the right to refuse the application after collecting the proceeds of the check.

■ The appellee argues that if the insurance here applied for had been approved in the insurance issued effective on the date of the application, then Mr. Evans would have had no coverage of insurance between the date of the application (and the date of his payment of advance premium) and the date when the application was approved and the policy issued; that this would allow the company to make a charge for life insurance for such intervening period of time for which Mr. Evans would have received nothing in return. Some authorities are quoted from other jurisdictions, holding that insurance for this intervening period under such circumstances was in existence. A notable case cited by the appellee is Gaunt v. John Hancock Life Ins. Co., 2 Cir., 160 F.2d 599, certiorari denied 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858, in an opinion by Justice Learned Hand; Hart v. Travelers Ins. Co., 236 App.Div. 309, 258 N.Y.S. 711 and Stonsz v. Equitable Life Assurance Society, 324 Pa. 97, 187 A. 403, 107 A.L.R. 178. Our Supreme Court in Southland Life Ins. Co. v. Vela, supra, has held that such an agreement is not in violation of public policy and approves such an agreement and contract for reasons stated in the opinion in that case.

The appellee also cites and relies upon the Texas case of Colorado Life Ins. Co. v. Teague, Tex.Civ.App., 117 S.W.2d 849, 851, in asserting that the application and conditional receipt in the Evans application before us served to place temporary insurance in effect on the life of Mr. Evans. We do not so construe the holding in the Teague case. The receipt which was the basis of litigation in the Teague case read in part as follows: "If, according to the company's rules and requirements, the applicant was age 45 or under and insurable as a standard risk on the date of the application to which this receipt was attached and said 'first payment' has been paid in cash, then in such an event such insurance not in excess of $2500 shall be in force from the date of the payment of said

money." Upon a showing in the case that Teague was under 45 years of age and was insurable as a standard risk on the date of his application and that the first payment had been made, the court held that under the express provision of the agreement Teague had temporary insurance for the amount applied for, which was less than $2500. The opinion further stated as follows: "We are not dealing with what is generally known as a 'conditional receipt' or what is less frequently called 'a conditional binding receipt.' Commonly there is found in this type of receipt, and in some instances duplicated in the application, a provision to the effect that the insurance shall be considered as in force from the date of the receipt, or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Of course, such an instrument is ineffectual to provide protection to the applicant until the application is approved or rejected." We believe this case is in support of the contentions of appellant insurance company here.

An extensive digest and annotation of the question of temporary life insurance pending approval of the application is found in 2 A.L.R.2d 943. On page 964 of said annotation is found the following: "The general rule adhered to by most of the courts, at least, in their earlier decisions, is to the effect that where a binding receipt is issued to the applicant making the obligation of the insurance company conditional upon acceptance and approval by the company, the company is not bound until it approves and accepts the application, on the grounds that the express condition of acceptance has not occurred." In this connection the following Texas cases are cited: Connecticut Mutual Life Ins. Co. v. Rudolph, supra; Beaty v. Southland Life Ins. Co., supra; Colorado Life Ins. Co. v. Teague, supra.

 We believe that under the authorities and facts here the appellant life insurance company had not approved the application of Mr. Evans at its home office; that such approval by the company was essential to the formation of a contract of life insurance and that therefore no insurance contract ever came into existence.

The facts show that the company notified the appellee Mrs. Evans that the insurance applied for would not be issued and that the $733.75 payment would be returned to whoever should be shown to be entitled to it 13 days after the application was dated and 11 days after the company received it. This could in no way be viewed as a retention of payment of the premium in such a way as to work an estoppel against the company.

It follows that we believe the trial court was in error in setting aside its first judgment in favor of the insurance company and rendering judgment in favor of the appellee. The judgment of the trial court is therefore reversed and judgment here rendered that the appellee take nothing by her suit against the appellant.