

# NUMBER 13-11-00748-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALICIA OLABARRIETA AND
ADALBERTO OLABARRIETA,                                    Appellants,

v.

COMPASS BANK, N.A. AND
ROBERT NORMAN,                                              Appellees.

## On appeal from the 206th District Court
of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Justice Garza**

Appellants, Adalberto and Alicia Olabarrieta, challenge the granting of summary

judgment in favor of appellees Compass Bank and Robert Norman, in the Olabarrietas'

suit alleging various torts arising out of a loan secured by real property.  We affirm.

# I. Background

The Olabarrietas borrowed $238,000 from Texas State Bank in March of 2003.[1] The loan was secured by real property located on McColl Road in McAllen, Texas. The note was payable on demand and matured with a balloon payment due in March of 2006. The Olabarrietas had difficulty developing the property, and the Bank agreed to delay maturity of the loan until March of 2009. However, the Olabarrietas could not make the balloon payment when it became due. According to the Bank, the Olabarrietas also failed to pay ad valorem taxes on the property.

The Olabarrietas, who also had two other outstanding loans with the Bank, sought to sell the property and allegedly obtained an offer from Guillermo Garza to purchase the property for $150,000. The Olabarrietas informed the Bank of Garza's willingness to purchase the property but they did not receive a response from the Bank. Instead, the Bank declared the Olabarrietas to be in default on all three loans, and it foreclosed on the McColl Road property on January 5, 2010. At the foreclosure sale, the property was sold for $111,000.

Later in 2010, the Olabarrietas filed suit against the Bank, claiming tortious interference with contract, tortious interference with prospective business relations, wrongful foreclosure, and trespass to try title. The Bank asserted counterclaims for amounts due under the loans.

The Bank filed a hybrid traditional and no-evidence motion for summary judgment as to the Olabarrietas' claims. The Olabarrietas filed a response to the motion for summary judgment, which included Adalberto Olabarrieta's affidavit as evidence.

[1] Compass Bank is the successor-in-interest to Texas State Bank with respect to the loan at issue. We will refer to both banks and appellee Norman, one of the bank's loan officers, collectively as "the Bank."

2

The trial court granted summary judgment, dismissing the claims made against the Bank. The case went to trial on the Bank's counterclaims. Following the presentation of evidence, the trial court granted a directed verdict in favor of the Bank and entered judgment accordingly. The Olabarrietas now appeal the summary judgment granted in favor of the Bank prior to trial. The directed verdict sustaining the Bank's counterclaims is not at issue here.

## II. STANDARD OF REVIEW

A motion for summary judgment may be brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A motion for no-evidence summary judgment is equivalent to a motion for pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g). Such a motion should be granted if there is no evidence of at least one essential element of the claimant's cause of action. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion, and if the non-movant produces evidence raising a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Ortega*, 97 S.W.3d at 77s2 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *see Forbes*, 124 S.W.3d at 172.

3

Conversely, more than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes*, 124 S.W.3d at 172; *Ortega*, 97 S.W.3d at 772 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005).

We review the trial court's granting of a traditional motion for summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorse*tt, 164 S.W.3d 656, 661 (Tex. 2005).

When a trial court does not specify its grounds for granting a "hybrid" summary judgment motion, as here, we first employ the no-evidence summary judgment standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If summary judgment was not proper on no-evidence grounds, we then employ the

4

traditional summary judgment standard of review. *See id.* We will affirm a summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004).

### III. TORTIOUS INTERFERENCE CLAIMS

We first address the Olabarrietas' claims of tortious interference with contract and tortious interference with prospective business relations.

Texas courts have identified the elements of tortious interference with an existing contract as: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). To prove a cause of action for tortious interference with prospective contractual relations, a plaintiff must establish the following elements: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., that the defendant's actions prevented the relationship from occurring. *See Tex. Disposal Systems Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex. App.—Austin 2007, pet. denied) (citing *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001)); *Brown v. Swett & Crawford of Tex., Inc.,* 178 S.W.3d 373, 381–82 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 491 (Tex. App.—Corpus

Christi 2002, no pet.). Interference is tortious only if it is intentional, and the intent required is the intent to interfere, not just an intent to do the particular acts done. *See Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

The Bank moved for summary judgment with respect to the tortious interference claims on several grounds, including: (1) no evidence of intentional interference; (2) no evidence of an independent tortious or unlawful act; and (3) privilege. We first address the Bank's argument that there was no evidence on the element of intentional interference or intervention, a common element to both tortious interference with an existing contract and tortious interference with prospective business relations. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *Tex. Disposal Systems Landfill, Inc.*, 219 S.W.3d at 590.

The Olabarrietas submitted an affidavit by Adalberto Olabarrieta into evidence in response to the Bank's motion. In the affidavit, Olabarrieta states, in relevant part:

> After approximately more than 6 years of making payments on the note secured by the uncompleted construction project,[2] my wife and I informed [the Bank] that it did not appear feasible to continue making payments on the note. I found a willing buyer for the property, one Guillermo "Willie" Garza. An agreement[3] was reached between Mr. Garza and my wife and I whereby Mr. Garza agreed to purchase the property and thereby get my wife and I off the hook for liability on the note.

Olabarrieta further states that neither he nor Garza received a response from the Bank regarding Garza's offer to purchase the land. The Bank's failure to respond to Garza's offer is the only evidence presented to support intentional interference with any existing or prospective contract between Garza and the Olabarrietas. But mere silence alone is

---

[2] Despite Olabarrieta's representations, the record reflects that the loan was secured by the land, not by any planned "construction project."

[3] Throughout the Olabarrietas' brief, this alleged "agreement" is referred to merely as an "offer." There is no other evidence that any contractual arrangement was ever consummated between Garza and the Olabarrietas.

insufficient to constitute intentional interference. *See Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 337–38 (Tex. App.—Houston [14th Dist.] 1991, no writ) (holding that "[n]either silence, hostility, nor a failure to respond is sufficient to support" a claim for tortious interference with prospective business relations); *see also Am. Life Ins. Co. v. Nabors*, 76 S.W.2d 497, 498 (Tex. 1934) ("Where the law imposes no duty to contract, there can be no such thing as negligence of a party in the matter of delay in accepting or rejecting an offer so to do"). Furthermore, no summary judgment evidence was presented to the trial court to indicate that the Bank intended to interfere with Olabarrieta's existing or prospective business relations with Garza. *See Sw. Bell Tel. Co.*, 843 S.W.2d at 472; *Exxon Corp. v. Alsup*, 808 S.W.2d 648 (Tex. App.—Corpus Christi 1991, writ denied) (noting that malice, as an element of cause of action for tortious interference with prospective contract or business relations, is to be understood as characterizing an unlawful act done intentionally). Accordingly, we hold that the Bank's silence and inaction are not sufficient to constitute intentional interference under these circumstances.

The Olabarrietas rely upon *International Union UAW v. Johnson Controls, Inc.* for the proposition that intent may be established by showing that the Bank's tortious conduct made performance more burdensome or difficult to prove the intent necessary for interference with contract and business relations. *See* 813 S.W.2d 558, 568 (Tex. App—Dallas 1991, writ denied). That reliance is misplaced. In *Johnson Controls*, the court identified a specific tortious act committed by the defendants before addressing intent. *See id.* On the other hand, the Olabarrietas presented no evidence that the Bank committed any specific tortious act. *See Nabors*, 76 S.W.2d at 498. Therefore, we do not find *Johnson Controls* to be persuasive.

7

The Olabarrietas presented no evidence of intentional interference, an essential element of their tortious interference with an existing contract and tortious interference with prospective business relations claims. Summary judgment in favor of the Bank was therefore proper on those claims.

## IV. WRONGFUL FORECLOSURE

The Olabarrietas also asserted that the Bank wrongfully foreclosed on the McColl Road property. A debtor may recover damages for common-law wrongful foreclosure only if the mortgagee either (1) fails to comply with statutory or contractual terms, or (2) complies with such terms, yet takes an affirmative action that detrimentally affects the fairness of the foreclosure process. *First State Bank v. Keilman*, 851 S.W.2d 914, 921–22 (Tex. App.—Austin 1993, writ denied). Furthermore, a mortgagee is under no duty to take affirmative action, beyond that required by statute or the deed of trust, to ensure a fair sale. *See Powell v. Stacy*, 117 S.W.3d 70, 74 (Tex. App.—Fort Worth 2003, no pet.). The Olabarrietas' basis for challenging the foreclosure rests on Adalberto's affidavit, in which he states that he never received a response from the Bank about Garza's offer to purchase the property.

The Olabarrietas presented no summary judgment evidence that the Bank violated any terms of the deed of trust for the McColl property. In fact, Adalberto states in his affidavit that he informed the Bank "that it did not appear feasible to continue making payments on the note." There was no evidence that the Bank's foreclosure on the McColl property failed to comply with any statutory or contractual terms. *See First State Bank*, 851 S.W.2d at 921–22. Furthermore, there was no summary judgment evidence presented indicating that the Bank failed to act with absolute impartiality and

8

fairness in performing the powers vested in it by the deed of trust. *See id.* The trial court's no-evidence summary judgment was therefore proper.

The Olabarrietas rely on testimony elicited throughout the trial on the Bank's counterclaims to prove the Bank was aware of the agreement between Garza and the Olabarrietas and consciously decided to ignore it. But that evidence was not available to the trial court at the time of summary judgment review and therefore cannot be considered for purposes of this appeal. *See Johnnie C. Ivy Plumbing Co. v. Keyser*, 601 S.W.2d 158, 160 (Tex. Civ. App.—Waco 1980, no writ) ("In reviewing an appeal from summary judgment, we can only consider the record as it existed at the time the summary judgment was entered."). Summary judgment was proper on the wrongful foreclosure claim.

### V. TRESPASS TO TRY TITLE

Finally, the Olabarrietas brought a trespass to try title action against the Bank. The trespass to try title action is a statutory method of determining title to lands, tenements, or other real property. TEX. PROP. CODE ANN. § 22.001(a) (West 2000). The prevailing party's remedy is title to, and possession of, the real property interest at issue. *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The plaintiff in a trespass to try title action is required to prove its title by proving (1) a regular chain of conveyances from the sovereign to the plaintiff, (2) a superior title to that of the defendant out of a common source, (3) title by limitations, or (4) prior possession, which prior possession has not been abandoned. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). In its motion for summary judgment, the Bank contended that the Olabarrietas did not offer the necessary proof required to prove title. We agree.

9

The evidence submitted to the trial court for summary judgment review indicates that the Olabarrietas ceased making payments on the McColl property before fulfilling their financial obligation. Accordingly, the Bank foreclosed on the property and properly obtained title. On appeal, the Olabarrietas assert that "[the Bank's] actions caused the note not to be paid" by interfering with contract and business relations. However, we have already held that the trial court's summary judgment was proper in regard to the tortious interference with contract and business relations claims, and there was no other evidence independently offered on behalf of the Olabarrietas for the trespass to try title claim. In any event, the Olabarrietas do not provide any legal argument on appeal as to why this Court should reverse the trial court's summary judgment order on the trespass to try title claim. *See* TEX. R. APP. P. 38.1(i).

Because there was no tortious interference with contract or prospective contractual relations as a matter of law, the Olabarrietas' trespass to try title claims also fail as a matter of law. Summary judgment on those claims was therefore proper.

## VI. CONCLUSION

The trial court's judgment is affirmed.

/s/ Dori Contreras Garza
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
1st day of August, 2013.